UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| James/Rose Fall ) | Case No. 08-33018 |
| Debtor(s) ) | |

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motions of Creditors, National City Bank and Farmers and Merchants State Bank, to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b). (Doc. No. 141 & 176). The Debtors, James and Rose Fall, have objected to these Motions. (Doc. No. 145 & 196). Also heard at the time of the Hearing were three additional matters related to the pendency of the Debtors' Chapter 11 case:

(1) Application to Employ Cynthia G. Tesznar as attorney for appeal Nunc Pro Tunc, (Doc No. 160);

(2) Motion of Farmers and Merchants State Bank to Show Cause for Debtor in Possession Failing to Comply with Orders of the Court, (Doc No. 156); and

(3) a status hearing.

Present at the Hearing were: Debra Spychalski, Attorney for the Debtor-in-Possession; James Fall, Debtor; Patricia Fugee, Attorney for National City Bank; Patrick Hendershott, Attorney for Farmers and Merchants State Bank; Attorney Cynthia G. Tesznar; and Ronna Jackson, Attorney for the United States Trustee.

At the conclusion of the Hearing, the Court took the matters under advisement so as to afford the time to give further consideration to the issues raised at the Hearing. The Court has now had this opportunity, and finds that cause for dismissal exists for purposes of § 1112(b). Accordingly, this

**In re: James/Rose Fall**
**Case No. 08-33018**

case will be Dismissed. This following discussion memorializes the basis for this decision, and shall constitute this Court's findings of fact and conclusions of law in accordance with Bankruptcy Rules 7052 and 9014.

## BACKGROUND

On the June 10, 2008, the Debtors, James and Rose Fall, filed a voluntary petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors disclosed in their petition that they were a small business within the meaning of § 101(51D). During the pendency of their case, the Debtors operated their business as a Debtor-in-Possession in accordance with § 1107.

Shortly after the commencement of the case, the Court issued an order providing that "a written Order of Approval by this Court shall be required for Authority for Use of Cash Collateral by the Debtor-in-Possession." (Doc. No. 12). This Order supplements § 363(c)(2) of the Code which conditions the use of cash collateral on court authorization. Notwithstanding, the record in this case shows that during certain periods the Debtor-in-Possession used cash collateral without Court approval.

In their petition, the Debtors listed secured debt totaling $1,633,305.39; unsecured, priority claims of $17,999.36; and unsecured, nonpriority claims of $223,236.42. In addition, the Debtors disclosed an interest in three parcels of real property: (1) a residence at 1961 South Holland Sylvania Road, valued at $250,000.00 and having a secured claim of $229,935.00; (2) a commercial plaza at 7130 Airport Highway, valued at $1,500,000.00 and having a secured claim of $1,089,177.00; and (3) a one-fourth interest in a farm located at 4919 South Avenue, valued at $225,000.00 and having a secured claim of $300,000.00. (Doc. No. 1). National City Bank is the holder of the secured

Page 2

**In re: James/Rose Fall**
**Case No. 08-33018**

interest on the property located on Airport Highway; Farmers and Merchants State Bank holds the security interest on the farm located on South Avenue.

At the time of the Hearing held on the Creditors' respective Motions to Dismiss or Convert, the Court had relieved the stay of § 362 with respect to the farm located at 4919 South Ave. (Doc. No. 136). This order is now on appeal before the District Court. (Doc. No. 149).

On January 7, 2009, immediately preceding the Hearing held on the instant Motions to Dismiss or Covert, a plan of reorganization was filed by the Debtors. (Doc. No. 202).

## DISCUSSION

Before this Court are two Motions brought by Creditors, National City Bank and Farmers and Merchants State Bank, to Dismiss or Convert Case pursuant to 11 U.S.C. § 1112(b). This type of proceeding, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, is a core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). And as a core proceeding, this Court has been conferred with the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

Section 1112(b)(1) prescribes that a court is to dismiss or convert a case where "cause" is found to exist, providing:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter,

Page 3

> whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Section 1112(b) then goes on to provide, in paragraph (4), a nonexclusive list of grounds which may constitute "cause" for dismissal or conversion. Once "cause" is found to exist, dismissal or conversion is mandatory unless it can be shown that, under the conditions set forth in the opening proviso of § 1112(b), grounds exist not to convert or dismiss the case. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D.Pa. 2007) (with the enactment of BAPCPA, the statutory language of § 1112(b) has been changed from permissive to mandatory).

> Among the enumerated grounds giving rise to "cause" in § 1112(b)(4) are:
>
> (1) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, § 1112(b)(4)(A);
>
> (2) gross mismanagement of the estate, § 1112(b)(4)(B);
>
> (3) unauthorized use of cash collateral substantially harmful to 1 or more creditors, § 1112(b)(4)(D);
>
> (4) failure to comply with an order of the court, § 1112(b)(4)(E).

As now explained in order of enumeration, the preponderance of the evidence shows all these grounds to be present. *In re Woodbrook Associates*, 19 F.3d 312, 317 (7th Cir. 1994) (where action under § 1112 is brought, movant bears burden of proving by preponderance of evidence that cause exists).

The first ground, above, which may give rise to "cause" for dismissal or conversion is read in the conjunctive so that the moving party must demonstrate that there is both a (1) continuing loss to or diminution of estate assets and (2) an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). The first half of this equation is often met by showing that the debtor

Page 4

**In re: James/Rose Fall**
**Case No. 08-33018**

continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief. *In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994). The second part, rehabilitation, does not necessarily denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something more, with it being described as "to put back in good condition; re-establish on a firm, sound basis." *In re V Companies*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002). Applied to this case, these standards demonstrate the existence of "cause" for purposes of § 1112(b).

Throughout the course of this case, the Debtor-in-Possession has iterated that its potential to rehabilitate itself is highly dependent on its ability to fully realize the income producing potential of its commercial plaza located at 7130 Airport Highway. The importance of this facet was directly recognized in the plan of reorganization submitted by the Debtor-in-Possession wherein it proposed to treat National City Bank, the secured creditor of the Plaza, as follows:

> The full payment of $7,285 plus $3,000 will be paid once a tenant has been obtained for the "Nick's Steakhouse" unit and The Airport Lounge is able to begin paying its lease and the space occupied by Curves when fully paying its lease. During the interim, DIP will pay a total of $4,500 per month to National City Bank plus any additional amounts received from the new tenant, Curves or The Airport Lounge up to a total of $10,285 monthly for current and arrears payments.

(Doc. No. 202). However, since the commencement of this case, the Debtor-in-Possession has been completely unsuccessful in its attempt to improve the income earning potential of the Plaza. Rather, the conditions as they existed at the commencement of the case persist, with the income generated by the Plaza being still insufficient to fully service the debt held by National City Bank, much less other obligations such as the unsecured creditors whose cumulative debt totals over $200,000.00.

This condition arises because, as pointed out by National City Bank, only 53% of the rental space at the Plaza is presently occupied by tenants who fully pay their required lease payments. (Doc. No. 141, at pg. 9). In this way, the Debtor is still unable to collect full rent at one business – Curves

Page 5

**In re: James/Rose Fall**
**Case No. 08-33018**

– whom leases a space at the Plaza. Two other places at the Plaza, the Airport Lounge and Nick's Steakhouse, also continue to under produce.

While some effort has been made to re-let those spaces at the plaza not producing optimal income, this effort can only be termed too little and too late. Of first concern, the Debtor-in-Possession has only recently obtained the services of a broker, and then only with regards to the restaurant, Nick's Steakhouse. Additionally, any improvement at the other two underperforming places at the Plaza is based entirely on speculation and hope that things will improve in the future – e.g., Mr. Fall stated that, with regards to the Lounge, he hoped patrons formerly lost to Ohio's smoking ban will return. At this stage, however, with the case being about seven months old and past the exclusivity period for filing a plan under § 1121(e),[1] offering vague promises of future improvements is not acceptable.

Another related matter has also not gone unnoticed. Two of the three underperforming units at the Plaza, the Airport Lounge and Nick's Steakhouse, are leased by insiders; to wit: Mr. Fall and/or his son. While not alone problematic, this situation has become problematic given that it has made it difficult, if not impossible, for the Debtor-in-Possession to perform its fiduciary duties. *See In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3rd Cir. 2004) (a debtor-in-possession owes a fiduciary duty to its creditors). In particular, neither Mr. Fall nor his son has made meaningful lease payments since the commencement of this case. To the contrary, Mr. Fall has and seeks to continue to use rents from the Plaza to pay himself an amount of $3,000.00 per month for personal expenses, thereby

---

[1] In a small business case–

> (1) only the debtor may file a plan until after 180 days after the date of the order for relief, . . .

Page 6

placing a further financial drain on the resources of the Debtor-in-Possession. Mr. Fall has also been unwilling to pursue his son for his obligations under the lease.

In sum, since the commencement of this case in June of 2008, a period of approximately seven months, the Debtor-in-Possession has been unable to fully service its debt to National City Bank, which requires, exclusive of arrears, a minimum payment of $7,285.00 per month. Instead, as taken from its proposed plan of reorganization, the Debtor-in-Possession's ability to pay said obligation is and will for the foreseeable future be limited to approximately $4,500.00 per month. As a result, the Plaza, not to mention the farm against which Farmers and Merchant State Bank holds a secured interest, is not profitable on a stand-alone basis, making the feasability of any plan of reorganization highly suspect. Compounding the problem, Mr. Fall has used and seeks to continue to use substantial rents from the Plaza to the unfair detriment of the Creditor, National City Bank.

Overall, not only do these facts tend to show that there will exist a continuing loss to the estate and that there is not a reasonable likelihood of rehabilitation, but such facts also go far in establishing a gross mismanagement of the estate as provided in § 1112(b)(4)(B). Additional facts further play out the mismanagement of the estate by the Debtor-in-Possession.

First, since the commencement of this case, the Debtor-in-Possession has played it loose with his finances; for example, the evidence is clear that cash collateral of one creditor, whether National City Bank or Farmers and Merchants State Bank, has been used, without Court authority, to pay other creditors not having an interest in the cash collateral. This failure to properly account for the use of cash collateral goes contrary to § 363(c)(4) which sets forth that "the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control." Along this same line, there were indications that the Debtor-in-Possession did not fully perform his duty to maximize estate assets. By way of example, the Court is not satisfied that the Debtor-in-Possession made a good faith effort to fully pursue its accounts receivable.

Page 7

In re: James/Rose Fall
Case No. 08-33018

In the end, however, these are only symptoms of mismanagement, with true heart of the problem being that it has been impossible for the Court or Creditors, throughout the pendency of this case, to gain an accurate financial picture of the Debtor-in-Possession. *See In re Gateway Access Solutions, Inc.*, 374 B.R. at 565 (a debtor-in-possession has a duty of keeping the court and its creditors reasonably informed about the status and condition of its business). The primary reason for this: many of the financial statements provided by the Debtor-in-Possession have been cryptic. As but one example, National City Bank attached to its Motion to Dismiss or Convert an unintelligible statement the Debtor-in-Possession utilized to convey its financial information. (Doc. No. 141, Ex. No. 1).

However, even if the foregoing facts were not in existence, "cause" would still exist to dismiss or covert this case under § 1112(b). Pursuant to § 1112(b)(4)(D), "cause" to dismiss or convert will arise where there is an "unauthorized use of cash collateral substantially harmful to 1 or more creditors." Similarly, "cause" for dismissal or conversion arises under § 1112(b)(4)(E) where there is a "failure to comply with an order of the court."

In this matter, the Debtor-in-Possession was required by both statute, § 363(c)(2), and this Court's case-administration order to obtain Court permission before using cash collateral. However, the record in this case unequivocally establishes that, during the following periods, the Debtor-in-Possession violated these directives: (1) June 10, 2008 thru June 27, 2008; (2) September 1, 2008 thru December 2, 2008; and (3) January 1, 2009 thru the present. While the first and last periods, being short in duration, could be forgiven for reasons of logistics, the second time period cannot be simply overlooked. For a period of over three months, or slightly under half the duration of this case, the Debtor-in-Possession found it expedient to use cash collateral without any authorization from the Court. But as this Court pointed out at the Hearing: How can it be expected that the Creditors obey this Court's orders and the Bankruptcy Code when the Debtor-in-Possession does not reciprocate?

Page 8

In re: James/Rose Fall
Case No. 08-33018

In mitigation, the Debtor-in-Possession put forth that during the time period in question, it was in continual negotiation with the Creditors, National City Bank and Farmers and Merchants State Bank, for the use of cash collateral. But whatever the merits of this position, it falls on deaf ears in this case given the breadth of the lapse and this disconcerting fact: The Debtor-in-Possession just recently failed to comply with the explicit directive of a cash collateral order already in existence and to which it had agreed. Specifically, it is noted that the Debtor-in-Possession did not comply with the explicit directive of this Court's third interim cash collateral order to provide the Creditor, National City Bank, with weekly reports of income and expenditures. Not only did this substantially harm the Creditor, National City Bank, whom had no way of knowing the disposition of its assets, but this utter disregard of the bankruptcy process flies in the face of the Bankruptcy Code's equitable nature.

It has been said that "the past is a prologue." The Debtor-in-Possession, having willfully failed to follow the orders of the Court, as well as the voluntary agreement made with creditors regarding the use of cash collateral, does not give this Court confidence that, if this case were to continue, there would be obeyance to any further orders.

Accordingly, for all these reasons, "cause" for dismissal or conversion exists within the meaning of § 1112(b). Once "cause" is found to exist, dismissal or conversion is mandatory, unless there exist "unusual circumstances" or the conditions set forth in § 1112(b)(2) are present. Neither situation exists in this matter.

The existence of "unusual circumstances" necessarily contemplates conditions that are not common in chapter 11 cases. *In re Products Intern. Co.*, 395 B.R. 101, 109 (Bankr D.Ariz. 2008). The fact that a plan has been filed in this case or that the estate may have equity in the Plaza does not, as suggested by the Debtor-in-Possession, rise to the level of an "unusual circumstance," as both events are commonly encountered in Chapter 11 cases. As explained in Collier on Bankruptcy:

Page 9

In re: James/Rose Fall
Case No. 08-33018

> Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.

7 Collier on Bankruptcy, ¶ 1112.04[3], p. 1112-26, 1112-27 (15th ed. rev.)

> Likewise, the conditions set forth in § 1112(b)(2) are not present. This provision provides:
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that–
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)–
>>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

For this purpose, paragraph (B) has not been satisfied as, contrary to its requirements, the Court has already found, as discussed *supra*, that grounds giving rise to "cause" exist within the meaning of paragraph (4)(A) of § 1112(b).

Page 10

In re: James/Rose Fall
Case No. 08-33018

In addition, for purposes of paragraph (A) of this provision, there is no reason to suppose that the plan of reorganization proposed by the Debtor-in-Possession would be able to be timely confirmed in accordance with § 1129(e) which, for small businesses, places a 45-day time limit on confirmation, commencing from when the plan is filed.[2] In this way, the plan proposed by the Debtor-in-Possession is likely to be met, given the history up to this point, with resistence from both National City Bank and Farmers and Merchants State Bank. Also, the plan, proposing only a 10% distribution to unsecured creditors, stands a reasonable chance of meeting resistance from that group of creditors.

In conclusion, the Court finds that "cause" for dismissal or conversion exists within the meaning of § 1112(b). Furthermore, the circumstances presented in this case do not, as a legal matter, rise to the level so as to mitigate against this finding of "cause." As such, the Court is required, by law, to dismiss or covert this case.

Pursuant to § 1112(b)(1), the decision to convert or dismiss is predicated on which "is in the best interests of creditors and the estate." For this, it is the Court's judgment, given the lack of any substantive evidence that substantial equity exists for the estate as a whole, that dismissal is proper. Having made this determination, those other matters raised at the Hearing – in particular, the application to employ Cynthia G. Tesznar and the motion to show cause – will be denied as moot.

---

[2]

In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

Page 11

In re: James/Rose Fall
Case No. 08-33018

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Motions of National City Bank and Farmers and Merchants State Bank, to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b), be, and are hereby, GRANTED.

***IT IS FURTHER ORDERED*** that this case is hereby DISMISSED.

***IT IS FURTHER ORDERED*** that the Application to Employ Cynthia G. Tesznar as attorney for appeal Nunc Pro Tunc, be, and is hereby, DENIED, as being moot.

***IT IS FURTHER ORDERED*** that the Motion of Farmers and Merchants State Bank to Show Cause for Debtor in Possession Failing to Comply with Orders of the Court, be, and is hereby, DENIED, as being moot.

***IT IS FURTHER ORDERED*** that the Status Hearing previously scheduled for January 27, 2009, at 03:30 P.M., be, and is hereby, VACATED.

Dated: January 8, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of January, 2009 to:

James Edward Fall
1961 South Holland Sylvania Rd
Maumee, OH 43537

Rose R Fall
1961 South Holland Sylvania Rd
Maumee, OH 43537

Deborah K Spychalski
PO Box 711
Toledo, OH 43697-0711

Cynthia G Tesznar
1701 Woodlands Dr
Maumee, OH 43537

Patrick D Hendershott
PO Box 525
Toledo, OH 43697

Ernest D Ducey
P.O. Box 525
Toledo, OH 43697-0525

Patricia B Fugee
One SeaGate, #1700
Toledo, OH 43604

Patti H. Bass
3936 E. Ft. Lowell Rd., #200
Tucson, AZ 85712

John J Hunter, Jr.
1700 Canton Ave
#1 Canton Sq
Toledo, OH 43604

Cynthia A Jeffrey
2450 Edison Blvd
Twinsburg, OH 44087

William H Webster
2222 Centennial Road
Toledo, OH 43617

Gilbert B Weisman
PO Box 3001
16 General Warren Blvd
Malvern, PA 19355

Kirk E Yosick
216 S Lynn St
Bryan, OH 43506

Lucas County Treasurer
One Government Center
Toledo, OH 43604

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court